## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KIMBERLY GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22-2309 |
| | ) | |
| UNIFIED GOVERNMENT OF | ) | |
| WYANDOTTE COUNTY/KANSAS | ) | |
| CITY KANSAS ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS WYANDOTTE COUNTY SHERIFF AND UNIFIED GOVERNMENT'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

**COMES NOW**, Defendants Wyandotte County Sheriff (hereinafter referred to as WYSO) and the Unified Government of Wyandotte County and Kansas City, Kansas (hereinafter referred to as UG), and pursuant to D. Kan. Rule 7.1(a), sets forth the following argument and authority in support of their Motion to Dismiss.  [DOC. 9]

## I.  Nature of the Case[1]

Plaintiff was an offender incarcerated in the Wyandotte County Adult Detention Center on May 22, 2021.  [pg. 5, ¶18]  On that same day, Plaintiff was standing in her cell doorway when an unknown and unnamed WYSO employee (Defendant Jane Doe), slammed the cell door shut where Plaintiff was resting her hand.  [pg.2, 5 ¶¶7, 20-22]  Plaintiff requested medical attention and was seen on May 24, 2021 and May 25, 2021 at which time x-rays revealed a break to the fifth metacarpal bone in Plaintiff's hand.  [pg. 5,

---

[1] All paragraph and page citations in this section relate to Plaintiff's Complaint, Doc. 1.

¶¶22,23]  An orthopedic consult was scheduled but Plaintiff was released before that could occur.  [pg. 5, ¶¶23, 24]

Plaintiff filed suit over these events on August 5, 2022 alleging that her Fourth, Eighth, and Fourteenth Amendments were violated and for negligence under the laws of the State of Kansas.  [pgs. 1-2,  ¶¶1, 2]  Plaintiff alleged that the UG is a county organized under the laws of the State of Kansas.  [pg.2, ¶3]  Plaintiff alleges that the WYSO is a law enforcement agency of the UG and is responsible for the day to-day operations of the county jail and providing charge and custody of the Wyandotte County Adult Detention facility.  [pg.2, ¶3]  Plaintiff further alleges that the UG has responsibility for law enforcement actions taken by the WYSO law enforcement personnel and had the full responsibility for managing the law enforcement personnel, and more specifically for hiring, promoting, training, supervising, disciplining, and firing employees of said County. In addition, Defendant Jane Doe had responsibility for performing functions as a duly sworn law enforcement officer.  [pg.3-4, ¶¶14-15]

In addition, Plaintiff alleges that "All of the actions and/or omissions of defendants took place pursuant to, and acting upon, the policies, practices, procedures, patterns, decisions, instructions, orders, and customs of defendant Unified Government of Wyandotte County/Kansas City, Kansas."  [pg.4,¶16]

As to the WYSO and the UG Defendants, the claims can be summarized as follows:

| COUNT I | 42 U.S.C. §1983; Eighth and Fourteenth Amendments-Deliberate Indifference to Serious Medical Need (Monell Claim) | WYSO, UG |
|---|---|---|
| COUNT II | 42 U.S.C. §1983; Eighth and Fourteenth Amendments-Failure to Supervise and Train  (Monell Claim) | UG |
| COUNT  III (Numbered as Count IV) | State law negligence | WYSO |

As set forth below, the WYSO and the UG should be dismissed from this action as the Petition has failed to state a claim for which relief can be granted.

## II.     Governing Standard:  Fed. R. Civ. P. 12(b)(6).

Pursuant to Fed. R. Civ. P. 12(b)(6), this Court must dismiss any claim that fails to state a plausible claim. WYSO and the UG are entitled to such relief because the Complaint fails to satisfy this standard.

In order to state a claim, a complaint must contain factual assertions describing the grounds entitling this Plaintiff to relief from the named Defendants. See Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Tenth Circuit, in *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011), identified the two "working principles" that underlie the *Twombly* standard. See also *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, this Court ignores legal conclusions, labels, and a formulaic recitation of the elements. See 656 F.3d at 1214. Second, a plaintiff must allege facts that make his or her claim plausible: "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" Id. (citing Twombly).

The factual allegations must be enough to "nudge" the claim across the line from conceivable to plausible. See, e.g., *Ridge At Red Hawk*, *L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In other words, the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*

Plausibility, like most things in life, depends upon the context. See *Kansas Penn*, 656 F.3d at 1215. For example, a simple auto accident negligence case requires little more than an allegation that "the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). On the other hand, a complaint asserting constitutional claims against a host of law enforcement officials clothed with immunities requires more. See *Kansas Penn*, 656 F.3d at 1215. Such a complaint must state facts sufficient to show (assuming they are true) that the defendants plausibly violated [his or her] constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 at 1249. Doing so requires the Section 1983 plaintiff to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1250.

Scrupulous adherence to the pleading standard of *Twombly, Robbins*, and *Kansas Penn* delivers upon the promise of a just, speedy, and inexpensive determination

of claims set forth in Federal Rule of Civil Procedure 1. It ensures that the defendants are placed on notice of their alleged misconduct and can prepare an appropriate defense. See *Kansas Penn*, 656 F.3d at 1215. It also permits the termination of meritless claims before "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." Id. (internal quotations and citations omitted).

### III.    WYSO is Immune From Suit in Federal Court Under the 11th Amendment

Plaintiff advances two claims against the WYSO.  The first is a civil rights claim for violations of Plaintiff's Fourth, Eighteenth, and Fourteenth Amendment rights pursuant to 42 U.S.C.§1983 alleging deliberate indifference to serious medical need. The second is a claim pursuant to the Kansas Tort Claims Act for negligence.  Both should be dismissed on ground the WYSO is entitled to immunity under the Eleventh Amendment.

The Eleventh Amendment provides immunity to unconsenting states and those acting on their behalf from federal suits for money damages. U.S. Const. Amend. XI; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).   It does not, however, extend immunity to counties, municipalities, or other local government entities. *Steadfast Ins. Co. v. Agric. In. Co*., 507 F.3d 1250, 1253 (10th Cir. 2007) (citation omitted). In determining whether a particular entity receives Eleventh Amendment immunity, the court considers whether the entity is an "arm of the state." *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977).

The four factor test found in *Steadfast* sets forth this analysis: (1) How is the entity is characterized under state law? (2) What is the entity's degree of autonomy from the state? (3) Where does the entity get its operating funds? (4) Is the entity primarily concerned with state or local affairs? 507 F.3d at 1253. "If a state entity is more like a political subdivision—such as a county or city—than it is like an instrumentality of the state, that entity is not entitled to Eleventh Amendment immunity." *Id.*

The Tenth Circuit and a number of courts in the District of Kansas have held that Kansas Sheriffs act on behalf of the state and are therefore immune from suit in Federal court. *See Hunter v. Young*, 238 F. App'x 336, 338 (10th Cir. 2007); *Broyles v. Marks*, No. 18-3030-SAC, 2018 WL 2321822, at *4 (D. Kan. May 22, 2018); *Self v. Cnty. of Greenwood*, No. 12-1317-JTM, 2013 WL 615652, at *2 (D. Kan. Feb. 19, 2013); *Brown v. Kochanowski*, No. 07-3062-SAC, 2012 WL 4127959, at *9 n.3 (D. Kan. Sept. 19, 2012), *aff'd* 513 F. App'x 715 (10th Cir. 2013).

In *Myers v. Brewer*, Case No. 17-2682 (D. Kan. Jun. 27, 2018), a case out of this very Court applied the test and indeed confirmed that a Sheriff in Kansas is entitled to Eleventh immunity as a state actor.  "First, the Kansas legislature created the office of the Sheriff.  Kan. Stat. Ann. § 19-801a. Sheriffs in Kansas are required—by statute, "to keep and preserve the peace in their respective counties, and to quiet and suppress all affrays, riots and unlawful assemblies and insurrections, for which purpose, and for the service of process in civil or criminal cases, and in apprehending or securing any person for felony or breach of the peace, they, and every coroner, may call to their aid

6

such person or persons of their county as they may deem necessary."   Kan. Stat. Ann. § 19-813.

Second, the Unified Government, as "the County Board of Commissioners, lacks authority to determine how a county Sheriff chooses his employees or expends budgeted funds". *Bd. of Cnty. Comm'rs v. Nielander*, 62 P.3d 247, 251 (Kan. 2003). "County sheriffs are not subject to local control. Rather, the Sheriff is an independently elected officer whose office, duties, and authorities are established and delegated by the legislature."   The Sheriff is not a subordinate of the Unified Government and neither are the Undersheriff or the Sheriff's Deputies and assistants. Rather, the Sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the Unified Government.  *Myers v. Brewer*, Case No. 17-2682 (D. Kan. Jun. 27, 2018)

While the UG does fund Sheriff's operations and those operations are limited in geography, these third and fourth factors are not significant "because these factors were the same for county attorneys in *Nielander*, wherein the Tenth Circuit still held that they were entitled to Eleventh Amendment immunity. 582 F.3d at 1164; *see also McMillian v. Monroe Cnty.*, 520 U.S. 781, 791 (1997) (recognizing that salary source and geographic limitations are not dispositive of whether an entity is an arm of the state)" *Myers v. Brewer*, Case No. 17-2682 (D. Kan. Jun. 27, 2018)

Likewise, because the claim against WYSO is barred because it is entitled to Eleventh Amendment immunity for the Federal claims, the state law claims against are

barred as well. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121-22 (1984) ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment").

Acknowledging that there has been a split within the District as to whether or not a local Sheriff is a state actor (*See*, *e.g.*, *Trujillo v. City of Newton*, No. 12-2380-JAR, 2013 WL 535747, at *10 (D. Kan. Feb. 12, 2013); *Reyes v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 07-2193-KHV, 2008 WL 2704160, at *7-9 (D. Kan. July 3, 2008), the claim still fails as Plaintiff has failed to state facts to support a proper *Monell* claim against WYSO.

Because municipal liability under § 1983 cannot be established based solely on vicarious liability, "a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d at 993–94.  A plaintiff may show the existence of such a policy or custom by: (1) a formal regulation or policy statement, (2) a widespread and well-settled practice within the municipality; (3) ratification of subordinates' actions by an employee with final policy-making authority, and (4) failure to adequately train or supervise employees as a result of deliberate indifference to potential injuries to the public. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010).

In order for Plaintiff's *Monell* claims to survive a motion to dismiss, she must have alleged facts sufficient for this Court to reasonably infer that Sheriff's Office

implemented or executed policies or customs that led directly to her unconstitutional denial of medical treatment or deliberate indifference to her serious medical needs, and that such policies or customs have a direct causal relationship with Plaintiff's alleged injuries. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Imposing liability without "rigorous" adherence to the requirement of culpability and causation improperly collapses into impermissible *respondeat superior* liability. *Bd. of Cty Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 415 (1997). Here, Plaintiff doesn't even identify a specific policy, custom or practice. She alleges no prior incidents to even suggest a widespread or well-settled custom or practice within the Sheriff's Office. She fails to allege any facts upon which the Court may reasonably infer that as a policy maker, the Sheriff made any sort of decision, or even ratified any unnamed officers' conduct prior to the alleged deprivation of any of Plaintiff's right. Plaintiff fails to allege any identifiable decision by anyone, which could constitute an official policy. Plaintiff alleges no facts on which to reasonably infer any sort of causation in the first instance. Instead, Plaintiff alleges only a formulaic recitation of elements along with vague conclusions, which is insufficient to set forth a plausible *Monell* claim. *Kerr v. Polis*, No. 17-1192, 2021 U.S. App. Lexis 36682, at *26 (10th Cir. Dec. 13, 2021) (citing *Ashcroft*, 556 US at 678).

## IV. The Unified Government of Wyandotte County/Kansas City Kansas Has No Legal Authority Over the Sheriff

Counts I and II are both federal claims under 28 U.S.C. §1983. Both these claims are made against the Unified Government. Neither the claim against the Unified

Government for deliberate indifference to serious medical need or failure to train or supervise can succeed and must also be dismissed.

The Petitioner alleges "All of the actions and/or omissions of defendants took place pursuant to, and acting upon, the policies, practices, procedures, patterns, decisions, instructions, orders, and customs of defendant Unified Government of Wyandotte County/Kansas City, Kansas."  [pg.4,¶16].  However, as noted above in Section II, the Unified Government has no role or ability to regulate the operations of the Sheriff's office under Kansas law.  It does not dictate Sheriff's policy and it does not train its employees.  It has no ability to hire or fire Sheriff's employees.  The enumerated powers and authority of a board of commissioners does not, by statute, include the charge and custody of the county jail or prisoners therein. K.S.A. § 19-811; *Meyer*, 518 F. Supp. 2d at 1287 ("The law in Kansas is clear that the Sheriff is the official in charge of the county jail.").  Thus, the UG has no control over the Detention Center or the prisoners contained therein as a matter of law.  Per KSA §19-801a, a Kansas Sheriff is a separate, independently elected official and his/her decisions and functions related to overseeing and controlling a jail and its prisoners are not subject to any review, meaningful or otherwise, by the Board of County Commissions.  *See Lee v. Wyandotte Cty.*, 586 F. Supp. at 238-39.  The Sheriff is simply not a subordinate unit of the Board. *Nielander*, 275 Kan. at 261 (2003).

Accordingly, where Plaintiff is attempting to establish official capacity liability for any detention-related policy, custom or practice—including liability based on a

final decision, ratification, training or supervision—of the Sheriff, the UG Should be dismissed outright.  *See e.g.*, *Estate of Belden*, 46 Kan. App. 2d at 287.

## V.    CONCLUSION

Plaintiff's Federal and State claims against the Defendant Wyandotte County Sheriff should be dismissed outright because the Sheriff, as an actor for the State of Kansas, is immune from suit in Federal Court.  The state law claim must also be dismissed on this basis.  Even if the Sheriff's Office was considered a local entity, Plaintiff has stated no facts to support that the Sheriff instituted a policy, custom, or practice that illustrates the denial of access to medical care or deliberate indifference to serious medical need.

Likewise, by state statute, the Unified Government of Wyandotte County/Kansas City, Kansas should also be dismissed.  All claims in this suit are based upon an alleged policy, custom or practice of the UG.  However, under Kansas law the Unified Government has no legal authority to dictate any policy, custom or practice in regard to Sheriff's operations, and thus has failed to identity facts or a policy of the Unified Government to sufficiently state a *Monell* claim against the UG.

Respectfully Submitted,
**UNIFIED GOVERNMENT**
**LEGAL DEPARTMENT**

/s/_____Joni Cole_____
**Joni Cole, KBN 24798**
**Legal Advisor to the Sheriff**
701 N. 7th Street, 9th Floor
Kansas City, Kansas 66101
Tel: 913-573-5069
Fax: 913-573-2972
Email: jscole@wycokck.org
**Attorney for Defendants Unified**
**Government and the**
**Wyandotte County Sheriff's Office**

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2022, the above and foregoing was electronically filed with the clerk of the court by using the CM/ECF system and that a copy of the same was served via email to the following:

James E. Brady , III
James Roswold
Kansas City Accident Injury Attorneys
510 Walnut Street, Suite 100
Kansas City, MO 64106
816-471-5111
Fax: 816-359-3163
Email: jim@kcaccidentattorneys.com
Email: james@kcaccidentattorneys.com

Tracy M. Hayes
Sanders Warren & Russell, LLP - OP
Compass Corporate Centre
11225 College Blvd., Suite 450
Overland Park, KS 66210
913-234-6119
Fax: 913-234-6199
Email: t.hayes@swrllp.com

/s/_____Joni Cole_____
**Joni Cole, KBN 24798**