## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KIMBERLY GEORGE,                                   ) | |
|                                                    ) | |
|                              Plaintiff,            ) | |
|                                                    ) | **CIVIL ACTION** |
| v.                                                 ) | |
|                                                    ) | **No. 2:22-cv-2309-KHV-RES** |
| UNIFIED GOVERNMENT OF                              ) | |
| WYANDOTTE COUNTY/KANSAS                            ) | |
| CITY KANSAS et al.                                 ) | |
|                                                    ) | |
|                              Defendants.           ) | |
| _____) | |

### MEMORANDUM AND ORDER

On August 5, 2022, Kimberly George filed suit against the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government"), the Wyandotte County Sheriff's Department, Wellpath, LLC, Dr. Danny K. Stanton, MD in his individual and official capacities, and Jane Doe in her individual capacity. Plaintiff alleges violations of federal civil rights under the Eighth and Fourteenth Amendments, U.S. Const. amends. VIII and XIV, and 42 U.S.C. § 1983 and common law negligence under Kansas law. Civil Complaint (Doc. #1). This matter is before the Court on the Motion To Dismiss (Doc. #9) which Unified Government and the Sheriff's Department filed September 12, 2022, Defendant Wellpath, LLC's Motion To Dismiss Plaintiff's Civil Complaint [Doc. 1] (Doc. #17) filed September 23, 2022 and Defendant Dr. Danny K. Stanton's Motion To Dismiss Plaintiff's Civil Complaint [Doc. 1] (Doc. #15) filed September 20, 2022. For reasons stated below, the Court sustains in part Unified Government and the Sheriff's Department's motion and sustains Wellpath and Stanton's motions.

### Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as

true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678.  Plaintiff makes a facially plausible claim when she pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.  Id. However, plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's complaint alleges as follows:

From approximately May 22 to June 29, 2021, plaintiff was an inmate at the Wyandotte County Detention Center.  Civil Complaint (Doc. #1) ¶¶ 18, 28.  On May 22, 2021, Jane Doe (an employee of Unified Government and the Sheriff's Department) violently pushed plaintiff's cell

door shut on plaintiff's hand.  Id. ¶¶ 7, 20, 21.  Plaintiff requested immediate medical attention, but medical staff did not see her until May 24, 2021—two days later.  Id. ¶ 22.  On May 25, 2021, after an x-ray, medical staff diagnosed plaintiff with a fracture of the proximal aspect of her fifth metacarpal.  Id. ¶ 23.  Following this diagnosis, plaintiff made several requests to see a doctor.  Id. ¶ 25.  Staff told plaintiff that they had scheduled her to see an orthopedic doctor, but she never met with one.  Id. ¶ 24.

In June of 2021, Stanton was a physician specializing in internal medicine and Wellpath employed him to provide medical treatment to inmates at the Unified Government Detention Center.  Id. ¶¶ 6, 26.  On June 10, 2021—without examining plaintiff—Stanton ordered that she receive two 500 mg tablets of Tylenol three times a day for 21 days.  Id. ¶ 26.  This was the only treatment which plaintiff received.  With a severely broken hand, she endured "excruciating pain" for over a month and did not receive "any meaningful treatment for the remainder of her incarceration."  Id. ¶ 27.  On August 5, 2021, after her release, plaintiff had a right fifth metacarpal open reduction and internal fixation surgery.  Id. ¶ 29.

## Analysis

In Count I, pursuant to Section 1983, plaintiff sues Stanton and Doe for (1) violating her Eight Amendment rights by acting deliberately indifferent to her known, serious medical needs and (2) violating her Fourteenth Amendment substantive due process rights by engaging in conduct that was objectively unreasonable and not rationally related to a legitimate nonpunitive governmental purpose.  Also in Count I, pursuant to Section 1983, under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) and its progeny, plaintiff sues Unified Government, the Sheriff's Department and Wellpath, alleging that they maintained policies, practices, procedures, patterns,

decisions and customs[1] of deliberate indifference to serious medical needs of prisoners which caused Stanton and Doe to violate her constitutional rights.

In Count II, also pursuant to Section 1983, plaintiff sues Unified Government because it had a policy or custom of failing to train and supervise its employees on the handling of inmates, and this caused Doe to violate her (1) Eight Amendment rights by acting deliberately indifferent to her known, serious medical needs and (2) Fourteenth Amendment substantive due process rights by engaging in conduct that was objectively unreasonable and not rationally related to a legitimate nonpunitive governmental purpose.[2]

Finally, in Count III, pursuant to Kansas common law, plaintiff sues the Sheriff's Department for Doe's negligent failure to ensure that plaintiff's hand was clear of the cell door, failure to warn plaintiff that she was closing the door, use of unreasonable force when closing the door on plaintiff's hand, failure to timely obtain medical care for plaintiff and failure to exercise reasonable care.

## II.    Unified Government

Unified Government seeks to dismiss plaintiff's Section 1983 claims against it (Counts I and II) because plaintiff has not sufficiently alleged facts to support her claims.  Plaintiff does not respond to these arguments.

### A.    Count I

---

[1]     Plaintiff does not specify the policies, practices, procedures, patterns, decisions or customs of which she complains.

[2]     Although Count I and II appear duplicative as to Wyandotte County, plaintiff apparently sets forth two theories of supervisory liability for Wyandotte County: (1) that the county maintained a policy of deliberate indifference to serious medical needs which caused Jane Doe to violate her constitutional rights and (2) that the county failed to train and supervise its employees on the handling of inmates which also caused Jane Doe to violate her constitutional rights.

In Count I, plaintiff's complaint alleges that the Sheriff's Department maintained policies, practices, procedures, patterns, decisions and customs of deliberate indifference to serious medical needs of prisoners.  Unified Government argues that plaintiff has not alleged (1) a specific policy, custom or practice of deliberate indifference to inmates' medical needs, (2) prior incidents which suggest a widespread or well-settled custom or practice or (3) a decision by anyone that constitutes official policy.   See Defendant Wyandotte County Sheriff And Unified Government's Memorandum In Support Of Their Motion To Dismiss (Doc. #10) filed September 12, 2022 at 9. As noted, plaintiff does not respond to these arguments.

Section 1983 does not authorize liability under a theory of respondeat superior.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Under Section 1983, a defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability.[3]  Personal liability under Section 1983 must, however, be based on personal involvement in the alleged constitutional violation.  Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011); Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  On the other hand, supervisory liability allows plaintiff to impose liability upon a defendant-supervisor who creates, promulgates or implements a policy which subjects, or causes plaintiff to be subjected, to the deprivation of any rights secured by the Constitution.  Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010).

---

[3]      Section 1983 provides in part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To establish supervisory liability, plaintiff must establish that (1) defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy, (2) the policy caused the alleged constitutional harm and (3) defendant acted with the state of mind required to establish the alleged constitutional deprivation. Dodds, 614 F.3d at 1199. To allege an unconstitutional custom or policy, allegations of "a single incident of unconstitutional conduct is not enough." Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1170 (10th Cir. 2009). Rather, plaintiff must show a "pattern of abuses." Brown v. Reardon, 770 F.2d 896, 901 (10th Cir. 1985).

Plaintiff states generally that the "actions, omissions, policies, practices, procedures, patterns, decisions, instructions, orders, and customs of defendants were the moving forces behind the constitutional and other violations" alleged. Civil Complaint (Doc. #1) ¶ 16. Plaintiff does not point to any particular policy of Unified Government, any pattern of misconduct within any department supervised by it or any informal policy or custom of deliberate indifference to medical needs. To meet this element of her claim, plaintiff rests on conclusory assertions, which do not suffice. See Sherman v. Klenke, 653 F. App'x 580, 593 (10th Cir. 2016) (assertion of policy standing alone "wholly conclusory" and would not survive motion to dismiss); Ward v. City of Hobbs, 398 F. Supp. 3d 991, 1041 (D.N.M. 2019) (at pleading stage, existence of Monell policy is conclusion up to which plaintiff must build, rather than fact that plaintiff may baldly assert); Granato v. City & Cnty. of Denver, No. 11-cv-00304-MSK-BNB, 2011 WL 3820730, at *8 (D. Colo. Aug. 30, 2011) (dismissing complaint with only conclusory allegations that failed to identify "particular custom or policy").

Plaintiff has not alleged Monell liability based on policy, procedure, practice, custom or usage. Accordingly, the Court dismisses Count I against Unified Government.

### B.    Count II

In Count II, also pursuant to Section 1983, plaintiff alleges that Unified Government had a policy or custom of failing to train and supervise its employees on the handling of inmates.  Unified Government again argues that plaintiff has not alleged facts necessary to establish liability under Monell and its progeny, and plaintiff again does not respond.

In limited circumstances, a local government decision not to train employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983.  See Connick v. Thompson, 563 U.S. 51, 60 (2011).  Plaintiff generally alleges, however, that Unified Government maintained a policy or custom of failing to provide prison officials training or adequate supervision on the handling of inmates.  Civil Complaint (Doc. #1) ¶ 44.  Plaintiff again stands on conclusory assertions, and again, they do not suffice.  See Sherman, 653 F. App'x at 593 (assertion of policy standing alone "wholly conclusory" and would not survive motion to dismiss).  The Court therefore dismisses Count II against Unified Government.

## II.     The Sheriff's Department

The Sheriff's Department seeks to dismiss Counts I and III based on of sovereign immunity under the Eleventh Amendment, U.S. Const. amend. XI.  In the alternative, the Sheriff's Department seeks to dismiss Count I because plaintiff has not alleged sufficient facts to support her claim.

### A.     Sovereign Immunity

In Counts I and III, plaintiff alleges that the Sheriff's Department violated her federal civil rights under the Eighth and Fourteenth Amendments and acted negligently under Kansas law.  The Sheriff's Department asserts immunity from suit under the Eleventh Amendment to the United States Constitution.  Plaintiff responds that under recent Tenth Circuit caselaw, the Sheriff's

Department is not an arm of the state which is entitled to immunity from suit in federal court.

Unless Congress has abrogated states' sovereign immunity or a state has consented to suit, the Eleventh Amendment bars federal courts from asserting jurisdiction over suits for damages against a state, its agencies and its officials acting in their official capacity. Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1999); see also Aaron v. Kansas, 115 F.3d 813, 814 (10th Cir. 1997). Moreover, "this principle applies as well to state-law claims brought into federal court under pendent jurisdiction." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984) ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.").

Eleventh Amendment immunity extends to states and state entities but not to counties, municipalities or other local government entities. See Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280 (1977). To determine the category into which a given entity falls, courts consider whether that entity is, or is not, an "arm of the state." Id.

In Steadfast Ins. Co. v. Agricultural Ins. Co., 507 F.3d 1250 (10th Cir. 2007), the Tenth Circuit determined that courts must weigh four factors in determining whether an entity constitutes an "arm of the state." Id. at 1253. Specifically, the Court must consider (1) "the character ascribed to the [defendant] under state law;" (2) "the autonomy accorded the [defendant] under state law;" (3) "the [defendant's] finances;" and (4) "whether the [defendant] in question is concerned primarily with local or state affairs." Id. (citations omitted). Applying these factors, the Tenth Circuit recently held that "Kansas sheriffs, when executing their law enforcement duties, represent their counties, not the State of Kansas." Couser v. Gay, 959 F.3d 1018, 1030 (10th Cir. 2020). Specifically, under Steadfast, the Tenth Circuit concluded that (1) Kansas statutes recognize sheriffs as county officers, and Kansas courts hold counties liable for the tortious acts of sheriffs,

-8-

id. at 1027; (2) a Kansas sheriff "operates largely independently of state constraints in carrying out its law enforcement function" and "is not treated as a state court employee in carrying out court-related functions," id. at 1028–29; (3) the county controls the sheriff's salary and has auditing authority over the sheriff's books, id. at 1029; and (4) "a Kansas sheriff's law enforcement responsibilities are limited to the sheriff's county," id. at 1030.

Accordingly, the Court holds that the Sheriff's Department is not an arm of the state which is entitled to immunity under the Eleventh Amendment. As to Count I and III, the Court overrules the Sheriff's Department's motion on these grounds. As to Count III, the Sheriff's Department does not argue that plaintiff fails to state a claim for common law negligence, so the Count III remains in the case.

**B.    Sufficiency Of Allegation In Count I**

In Count I, plaintiff alleges that the Sheriff's Department maintained policies, practices, procedures, patterns, decisions and customs of deliberate indifference to serious medical needs of prisoners.

The Sheriff's Department argues that plaintiff has not alleged (1) a specific policy, custom or practice of deliberate indifference to inmate's medical needs or substantive due process rights, (2) prior incidents which suggest a widespread or well-settled custom or practice or (3) a decision by anyone which could constitute an official policy. See Defendant Wyandotte County Sheriff And Unified Government's Memorandum In Support Of Their Motion To Dismiss (Doc. #10) filed September 12, 2022 at 9. Plaintiff does not respond to these arguments.

As noted above, local governments or municipalities can be held liable for their employees' actions taken pursuant to its "official policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); Monell, 436 U.S. at 694. Again, plaintiff does not allege a particular policy, pattern of

misconduct or custom of the Sheriff's Department regarding a deliberate indifference to medical needs or substantive due process rights.  Instead, plaintiff makes conclusory assertions, which cannot suffice.  See Sherman, 653 F. App'x at 593 (assertion of policy standing alone "wholly conclusory" and would not survive motion to dismiss).  Accordingly, the Court dismisses Count I against the Sheriff's Department.

**III.     Wellpath**

In Count I, pursuant to Section 1983, plaintiff's complaint alleges that Wellpath maintained policies, practices, procedures, patterns, decisions and customs of deliberate indifference to serious medical needs of prisoners.  Wellpath seeks to dismiss Count I because plaintiff has not sufficiently alleged facts to support her claim.  Plaintiff does not respond.

To hold a private corporation performing a government function liable under Monell and its progeny, plaintiff must allege (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy and (3) a direct causal link between the custom or policy and the violation alleged.  See Monell, 436 U.S. at 694; Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).

Plaintiff again asserts that the "actions, omissions, policies, practices, procedures, patterns, decisions, instructions, orders, and customs of defendants were the moving forced behind the constitutional and other violations" alleged.  Civil Complaint (Doc. #1) ¶ 16.  Plaintiff does not point to any particular policy of Wellpath, any pattern of misconduct within any of the departments supervised by it or any informal policy regarding a deliberate indifference to medical needs or substantive due process rights.  Instead, plaintiff makes conclusory assertions, which do not suffice.  See Sherman, 653 F. App'x at 593.  Plaintiff therefore fails to sufficiently allege a Monell claim based on policy, procedure, practice, custom or usage.  Accordingly, the Court dismisses

Count I against Wellpath.

## IV.   Stanton

In Count I, pursuant to Section 1983, plaintiff sues Stanton in his individual and official capacities for (1) violating her Eight Amendment rights by deliberate indifference to her known, serious medical needs and (2) violating her Fourteenth Amendment rights by engaging in conduct that was objectively unreasonable and not rationally related to a legitimate nonpunitive governmental purpose.  Stanton seeks to dismiss Count I because he argues that plaintiff has not alleged facts which demonstrate that he was objectively or subjectively deliberately indifferent to her medical needs.[4]  Plaintiff responds that she alleged sufficiently serious medical needs and that Stanton knew of these needs because Wellpath had documented her severely broken hand before Stanton treated her.

Personal liability under Section 1983 "must be based on personal involvement in the alleged constitutional violation."  Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011); Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  Prison officials violate the Eighth Amendment when they are deliberately indifferent to an inmate's serious medical needs.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980).  Deliberate indifference may be proven by showing that prison officials intentionally denied, delayed access to or interfered with an inmate's necessary medical care.  See Estelle, 429 U.S. at 104–05; Jones v. Hannigan, 959 F. Supp. 1400, 1406 (D. Kan. 1997); see also Farmer v. Brennan, 511 U.S. 825, 835–37 (1994) (prison officials act with deliberate indifference to inmate's health if they know that she faces substantial risk of serious harm and disregard that risk by failing to take reasonable

---

[4]      Stanton does not address plaintiff's claim under the Fourteenth Amendment.

measures to abate it).

The test for deliberate indifference includes both an objective and a subjective component. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires a sufficiently serious deprivation that results in the denial of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). A reasonable jury may conclude that a prison official subjectively knew of the substantial risk of harm by circumstantial evidence or "from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

To satisfy the subjective component, plaintiff must allege that each defendant knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837; Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006). This standard is not satisfied by proof of negligence or constructive notice of medical need. See Farmer, 511 U.S. at 835. Under the subjective component, the relevant question is "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" Mata v. Saiz, 427 F.3d 745, 753 (10th Cir. 2005). The prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Farmer, 511 U.S. at 837.

Under these standards, even a brief delay in providing medical care may constitute a violation of the Eighth Amendment where prison personnel delay care where it is apparent that delay would exacerbate the prisoner's medical problems. Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999). The medical need can be sufficiently serious when the condition results in substantial pain. Al-Turki v. Robinson, 762 F.3d 1188, 1193 (10th Cir. 2014); see also Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001) (element satisfied if inmate experiences

"considerable pain").  For example, when the pain lasts hours or days prior to treatment, the condition may be considered sufficiently serious.  See Al-Turki, 762 F.3d at 1193; see also Boretti v. Wiscomb, 930 F.2d 1150, 1154–55 (6th Cir. 1991) (prisoner who suffers pain needlessly when relief is readily available may state claim for deliberate indifference); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (few hours delay in treating inmate's broken foot could render defendants liable).

As to the objective component, plaintiff alleges that because Stanton did not provide her meaningful medical treatment, she endured excruciating pain for over a month.  Accordingly, plaintiff plead a sufficiently serious medical need.  As to the subjective component, plaintiff argues that because Wellpath documented her broken hand on May 25, 2021, Stanton knew or should have known about her serious condition when he prescribed her Tylenol on June 10, 2021.  Plaintiff does not allege that Stanton knew of the risk to her, however, and *recklessly* chose to disregard it.  Plaintiff cannot satisfy this element through allegations of constructive notice or negligence.  The Court therefore sustains Stanton's motion, and dismisses plaintiff's claim that Stanton violated her Eighth Amendment rights.  Plaintiff's Fourteenth Amendment claim against Stanton is not addressed in this motion, and it remains in the case.

**IT IS THERFORE ORDERED** that Unified Government and the Sheriff Department's Motion To Dismiss (Doc. #9) filed September 12, 2022 is hereby **SUSTAINED in part**.  Counts I and II are dismissed as to the Unified Government.  Count I is dismissed as to the Sheriff's Department.  Plaintiff's claim that the Sherriff's Department violated common law negligence under Kansas law remains.

**IT IS THERFORE FURTHER ORDERED** that Defendant Wellpath, LLC's Motion To Dismiss Plaintiff's Civil Complaint [Doc. 1] (Doc. #17) filed September 23, 2022 is hereby

**SUSTAINED**.  Count I is dismissed as to Wellpath, and plaintiff therefore has no remaining claims against it.

**IT IS THERFORE FURTHER ORDERED** that Defendant Dr. Danny K. Stanton's Motion To Dismiss Plaintiff's Civil Complaint [Doc. 1] (Doc. #15) filed September 20, 2022 is hereby **SUSTAINED**.  Plaintiff's claim against Stanton for violating her Eighth Amendment rights is dismissed.  Plaintiff's claim that Stanton violated her Fourteenth Amendment rights remains.

Dated this 13th day of February, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge